# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN A. WAGNER,

        Plaintiff,

v.

JEREMIAH BROWN, LATOYA
HUGHES, IDOC, RITA OGANWU,[1]
MEDICAL DIRECTOR BABICH,
CENTURION HEALTH LLC, LORI
CUNNINGHAM, CARISSA LUKING,
ADA COORDINATOR STEBER, JANE
DOE 1, C/O PLATTE, JOHN DOE 1, C/O
GILL, C/O STARK, C/O RIED, JANE
DOE 2, DR. GENTRY, JOHN DOE 2,
JANE DOE 3, and K. BICE,[2]

        Defendants.

Case No. 26-cv-00951-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff John Wagner, an inmate of the Illinois Department of Corrections (IDOC) currently at Lawrence Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is

---

[1] The Clerk of Court is **DIRECTED** to correct Defendant's name on the docket as follows: Rita Oganwu.

[2] In the Complaint, Plaintiff asserts allegations against an individual named K. Bice. K. Bice is described as the person who was serving as the ADA Coordinator at Lawrence Correctional Center when he arrived through around January 6, 2025, when R. Steber became the ADA Coordinator. (*See* Doc. 1, p. 10). Bice, however, is not listed as a defendant in the case caption. The Court usually will not treat individuals not listed in the caption as defendants. *See Myles v. United States,* 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). However, because Bice appears to be left out of the case caption due to oversight and for the sake of judicial economy, the Clerk of Court will be directed to add K. Bice as a defendant on the docket.

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff asserts a variety of constitutional violations that have occurred since he was transferred to Lawrence Correctional Center (Lawrence) on December 4, 2025. The majority of Plaintiff's allegations concern deliberate indifference to his serious medical needs. (Doc. 1, p. 5-7). He states he suffers from several serious medical conditions: a spinal disease; injuries from an incident that occurred at Hill Correctional Center (Hill) prior to his transfer to Lawrence; asthma and pulmonary conditions; a heart condition; diabetes and diabetic neuropathy pain; injuries from falling on December 8, 2025; injuries from the use of excessive force on December 8, 2025; injuries from falling on December 26, 2025; hunger strike complications; reoccurring discharge from his eyes; and vision problems. Specifically, Plaintiff alleges the following:

Plaintiff suffers from spinal stenosis, which causes sudden paralysis, spasmatic attacks, and ongoing pain. (Doc. 1, p. 5-6, 29; Doc. 2, p. 3). For years while he has been in the custody of IDOC, he has not received adequate medical care for his spinal condition. (Doc. 1, p. 7; Doc. 2, p. 3). Needed medical appointments have been repeatedly rescheduled, delayed, cancelled, or denied, and Director Hughes has allowed him to be transferred on three difference occasions while he awaited treatment at an outside medical facility, which interrupted his treatment. (Doc. 1, p. 7, 24, 26; Doc. 2, p. 3). These lapses in care have caused a decline in his health. (Doc. 1, p. 7; Doc. 2, p. 1). Plaintiff continues to experience untreated, excruciating pain, and he relies on the assistance of a wheelchair and other inmates for "everyday daily functioning." (*Id.*).

On December 4, 2025, Plaintiff was transferred from Hill to Lawrence on December 4,

2025, and placed in restrictive housing. (Doc. 1, p. 5, 24). At the time of his transfer, Plaintiff was suffering from untreated injuries he had recently incurred while at Hill. (*Id.* at p. 7). Plaintiff states that he had injured his "head/face, shoulder-side" and had blood and puss coming from his eyes. (*Id.* at p. 7). During the intake process, Plaintiff was seen by Nurse Jane Doe 1, and he informed her that he may have a concussion and that he needed pain medication. (*Id.* at p. 6). Plaintiff requested treatment at an off-site medical facility and for Nurse Jane Doe 1 to call the regional medical director and an ambulance in order to "be sure he [did not have a] concussion." (*Id.* at p. 6, 7). Despite his obvious physical injuries, and his requests, Nurse Jane Doe 1 did not examine him for a concussion, clean his wounds, or provide any kind of treatment or medication. (*Id.*). Plaintiff also sought medical care for his injuries from Sergeant Platte and Lieutenant John Doe 1, but his requests were denied. (*Id.* at p. 24).

Once he was placed in his cell, Plaintiff's property was taken from him by John Doe 2. (Doc. 1, p. 12, 27). John Doe 2 took Plaintiff's diabetes and pain medications for which he had "KOP" permits and had been allowed at Hill to keep in his possession. (*Id.*). John Doe 2 also confiscated his clothing, hygiene items, religious property, a cup, and stationery. (*Id.*). According to Plaintiff, he never received a property slip or any type of inventory paperwork, and many of these items were lost and not returned to him. (*Id.*).

Once transferred to Lawrence, Plaintiff also did not receive needed medical and ADA accommodation for his spinal condition. Plaintiff asserts that when he transferred his prescriptions Gabapentin, Tramadol, and Baclofen, and ADA accommodation, specifically in the form of a wheelchair, were not provided to him because Lawrence has a policy of not honoring an inmate's medical accommodations and prescriptions that are issued by another correctional facility prior to transfer. (Doc. 1, p. 6-7, 20). When Plaintiff requested his wheelchair and his pain medication, he

believes it was Nurse Practitioner Luking who denied his requests. (*Id.* at p. 6). He states that she refused to see him and provide medical care and honor his medical permits and medications. (*Id.* at p. 8). Plaintiff asserts that he was denied ADA accommodation for his mobility issues the entire time he was in restrictive housing, from December 4, 2025, until March 9, 2026. (*Id.* at p. 24; Doc. 2, p. 3).

After his arrival at Lawrence, for four or five days, Plaintiff submitted several medical slips and spoke to security staff and nurses regarding his need for medical treatment for his head, shoulder-side, and eye injuries. (Doc. 1, p. 7). He also wrote to NP Luking and ADA Coordinator Bice. (*Id.*). Plaintiff continued to suffer from pain, excruciating headaches, dizziness, loss of consciousness, blood and puss discharging from his eyes, and trauma to his neck, back and side. (*Id.* at p. 8).

On December 8, 2025, Plaintiff had a very sharp pain in his neck, back, side, and spinal area. (Doc. 1, p. 8). He lost all feeling on the left side of his body. (*Id.*). Plaintiff was taken to the health care unit where a nurse called the medical director, who authorized a pain shot. (*Id.*). The nurse also cleaned and sterilized Plaintiff's wounds from his Hill injuries. (*Id.*).

Later that evening, Plaintiff asked Correctional Officer Stark if he could take a shower. (Doc. 1, p. 8). Plaintiff told Stark and Sergeant Gill that he was unable to walk to the showers without mobility assistance. (*Id.* at p. 8, 9). Stark, Gill, and Lieutenant Ried, however, still made Plaintiff walk to the showers with his hands cuffed behind his back. (*Id.*). On the way to the shower area, Stark let go of Plaintiff's arm, and Plaintiff fell "face and head first." (*Id.* at p. 9). Gill then jumped on Plaintiff, placing his knee in Plaintiff's back and twisting Plaintiff's hand causing extreme pain. (*Id.*). The fall and use of unnecessary force caused cuts, abrasions, head and neck trauma, and his eyes to discharge a "sticky greenish" substance. (*Id.* at p. 26). A "code 3" was

called, and Plaintiff was taken by wheelchair to see Nurse Jane Doe 2, who did not provide him with any medical care. (*Id.* at p. 9). Plaintiff was placed in a shower stall for around twenty minutes for no reason, and while he was in the shower stall, he saw Gill, Ried, and Nurse Jane Doe 2 pointing and laughing at him. (*Id.* at p. 9, 25). Gill then instructed Plaintiff to "walk his ass to the cell immediately," and Plaintiff, with Stark's assistance, attempted to walk to his cell. (*Id.* at p. 25). Plaintiff fell again, and this time, Stark fell too. (*Id.* at p. 9, 25). Plaintiff further injured himself. (*Id.*). He requested additional medical care and grievances forms, but his requests were denied. (*Id.* at p. 9, 17, 26).

On December 16, 2025, Plaintiff was seen by Dr. Oganwu. (Doc. 1, p. 9). Plaintiff attempted to explain to her his medical history and need for medical care for his spinal condition. (*Id.*). He also requested to be sent to the emergency room for his "overt" injuries to his face and head. (*Id.* at p. 10). Dr. Oganwu stated that she was only going to address his asthma and diabetes during the appointment, and she refused to treat him for his spinal condition or other injuries. (*Id.*). Plaintiff continued to write letters seeking medical treatment to Dr. Oganwu, NP Luking, Healthcare Unit Administrator Cunningham, and ADA Coordinators Bice and then Steber. (*Id.*). He submitted grievances and wrote to and personally spoke with Warden Brown. (*Id.* at p. 10, 28). Although Warden Brown deemed his grievances urgent, Brown never actually intervened to ensure Plaintiff was receiving adequate medical care. (*Id.* at p. 10).

On December 26, 2025, Plaintiff went on a hunger strike to draw attention to the fact that he needed medical care, and he wanted his personal property returned to him. (Doc. 1, p. 13, 27-28). While on a hunger strike, he experienced "hunger strike complications." (*Id.*). Each shift, he informed staff that he was on a hunger strike and requested to be seen by Nurse Jane Doe 3 to treat his adverse health issues due to being on a hunger strike. (*Id.*). Sergeant Platte ignored his requests.

Platte and Nurse Jane Doe 3[3] told Plaintiff that he would most likely quit his hunger strike once he sees that no one cares about his demands for medical care and his property. (*Id.*).

On January 23, 2026, Plaintiff was seen by Dr. Gentry for his complaints about his eyes and vision. (Doc. 1, p. 17). Dr. Gentry came to his cell with three correctional officers, looked through the cell door, and stated, "You have good eyes." (*Id.*). Plaintiff asked how he could tell from that distance and informed Dr. Gentry that he had suffered trauma to his eyes and had previously been ordered glasses, eye medication, and tinted medical sunglasses. (*Id.*). Dr. Gentry responded that he still needed to review Plaintiff's chart. (*Id.*). As of filing the Complaint, Plaintiff still has not received medical care for his eye and vision concerns. (*Id.*).

On January 6, 2026, Plaintiff fell in the shower injuring his face, shoulder, and side. (Doc. 1, p.13). His wounds were cleaned, but he did not receive any further medical care. (*Id.*).

Plaintiff was scheduled to see Dr. Oganwu on February 17, 2026, but he was informed by two correctional officers that the appointment was canceled because Dr. Oganwu did not want to see him. (Doc. 1, p. 14). The officers told Plaintiff that he should be "mindful of who he complains about." (*Id.*). Around this time, Plaintiff's medication for his pain and "diabetes neurological condition" was discontinued. (*Id.* at p. 24).

From December 4, 2025, until February 2026, Plaintiff was housed in a cell with fecal matter in the vent, a broken window, and mold, rust and mildew caked on the faucet and toilet. (Doc. 1, p. 16). Plaintiff states that Platte, Lieutenant John Doe 1, and Warden Brown refused to do anything about the dirty conditions or move Plaintiff to another cell. (*Id.*).

From December 4, 2025, until March 9, 2026, Plaintiff was denied the use of showers,

---

[3] One page 13, Plaintiff refers to the unknown nurse who he interacted with while on his hunger strike as Jane Doe 3. On page 17, he refers to this individual as Jane Doe 1, who he believes is Nurse Rush. The Jane Does appear to be the same person but identified differently in error. The Court will refer to the unknown nurse as Nurse Jane Doe 3.

access to his property and hygiene items, and "diabetic line." (Doc. 1, p .14).

Plaintiff finally received the "bare minimum" level of care for his spinal condition on April 2, 2026. (Doc. 2, p. 4). On April 23, 2026, Dr. Oganwu informed Plaintiff that she had ordered "a course of treatment." (Doc. 1, p. 13). Plaintiff continued to file complaints and grievances to Warden Brown, HCU Administrator Cunningham, NP Luking, Dr. Oganwu, ADA Coordinator Steber, and Director Hughes seeking ADA accommodations, pain medications, and off-site medical care. (*Id.*). He also requested an ESI injection, which he states had been previously ordered. (*Id.* at p. 13-14).

In May 2026, Plaintiff's medication stopped altogether. (Doc. 1, p. 14). Plaintiff went on another hunger strike resulting "in severe injury on June 11, 2026." (*Id.*). Plaintiff was taken by ambulance to the hospital on June 14, 2026, and he was discharged on June 16, 2026. (*Id.*). Plaintiff asserts that "[D]efendants still refused to provide treatment even after Dr. Oganwu promised to renew some of his medications." (*Id.*). Babich, Dr. Oganwu, and Warden Brown kept Plaintiff "in lock" at the healthcare unit until he ended his hunger strike. (*Id.*). They withheld his legal mail interfering with his access to the courts. (*Id.*).

Plaintiff submitted five letters to the governor's office complaining about the lack of medical care. (Doc. 1, p. 15). The governor's office contacted Warden Brown, and Brown answered the letters, but "nothing was ever done." (*Id.* at p. 15, 17).

At some point, Plaintiff was ordered physical therapy, but because he was not provided with adequate pain medication, it was too painful to perform the exercises, and he was eventually removed from the list. (Doc. 1, p. 16). Plaintiff asserts that he continues to be denied medically necessary care for his spinal condition. (Doc. 2, p. 4).

### DISCUSSION

Plaintiff asserts many instances of being denied constitutionally adequate medical care while at Lawrence. Unfortunately, he takes the "kitchen sink" approach in drafting his Complaint, which makes it difficult to "determine the facts that constitute the alleged wrongful conduct." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011). The facts alleged in the Complaint are at times confusing because the events are not described in chronological order and some of the allegations conflict. For example, he attributes the denial of his medications to several Defendants for differing reasons. He states when he arrived at Lawrence, his prescriptions were discontinued because NP Luking, acting pursuant to a Lawrence policy, refused to see him and failed to honor the medical permits and prescriptions that were previously issued to him prior to his transfer. (Doc. 1, p. 6, 8). But he also claims that his prescriptions were discontinued because of a Centurion Health, LLC policy, custom, and practice in which medical providers within IDOC "remove prisoners from their medicines for less effective treatment." (*Id.* at p. 12, 20). And he asserts Defendants Stark and Gill retaliated against him by denying him medications. (*Id.* at p. 16). At some point, his prescriptions must have been refilled because without explanation he writes that his prescriptions were discontinued around February 17, 2026, and in "May 2026 stopped altogether." (*Id.* at p. 14). However, Plaintiff asserts that he has been denied pain medication since February 2026 (Doc. 1, p. 27), and that his medications were taken on March 9, 2026. (Doc. 2, p. 3).

Plaintiff also frequently conflates treatment for all of his conditions together, and so, it is unclear which serious medical condition a Defendant is treating with deliberate indifference and what exact conduct Plaintiff believes amounted to an Eighth Amendment violation. (*See* Doc. 1, p. 6, 15, 17, 19, 28). The generic assertion that one or more Defendants harmed him by denying

him medical care is not sufficient to state a claim because it is inadequate to demonstrate even a baseline level of personal responsibility. *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009). Under Section 1983, Plaintiff must allege that each Defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka,* 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park,* 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Additionally, federal pleading requirements dictate that a Complaint must "give defendants fair notice of the claims against them and the grounds for supporting the claims." *Stanard,* 658 F.3d at 797 (citing *Killingsworth v. HSBC Bank Nev., N.A*., 507 F.3d 614, 618 (7th Cir. 2007); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It is with these considerations in mind that the Court must dismiss some of Plaintiff's claims as improperly pled.

The Court dismisses Plaintiff's claims regarding inadequate medical treatment for diabetes, neuropathy and associated pain, heart condition, and asthma. Plaintiff makes generic statements such as "[D]efendants took away his pain medications for his spinal disease and diabetes neurological condition…," "Plaintiff requested to be placed in ADA cell or other due to the constant smoking of drugs which exacerbated his asthma and pulmonary conditions," and "Plaintiff has been requesting a nebulizing breathing treatment since January 2026 and though ordered on two occasions still hasn't received it." (Doc. 1, p. 24, 27). He does not adequately connect specific Defendants to illegal acts concerning these conditions. And as discussed above, it is not sufficient for him to plead that Defendants generally have either delayed or denied his medical care. (*Id.* at p. 28). Thus, any claim relating to the denial of medical care or ADA accommodation for diabetes, neuropathy, heart condition, and asthma is dismissed without

prejudice as improperly pled. FED. R. CIV. P. 8.

Plaintiff has also failed to state a claim regarding his "failure to train" claim against Director Hughes and Warden Brown. (Doc. 1, p. 11). Plaintiff asserts that Director Hughes and Warden Brown failed to train and supervise subordinates to adequately respond to his complaints. (Doc. 1, p. 11). The Constitution requires no grievance or complaint procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich,* 681 F.2d 1091, 1100–01 (7th Cir.1982). Additionally, prison officials are accountable for their own conduct and are not vicariously liable for the acts of their subordinates. *See Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). Therefore, to the extent Plaintiff is attempting to hold Director Hughes and Warden Brown liable because subordinate staff did not properly process his complaints and/or grievances due to lack of training and oversight, such claim is dismissed.

And finally, the Court dismisses Plaintiff's denial of access to courts claim. Plaintiff asserts that that Defendants Babich, Oganwu, and Brown interfered with his access to the courts. (Doc. 1, p. 14). To plead a denial of access to courts claim under the First and Fourteenth Amendments, a plaintiff must establish that the defendant's conduct impeded his ability to pursue legal claims and that he suffered "actual injury as a result." *See Ortiz v. Downey,* 561 F.3d 664, 671 (7th Cir. 2009). In the Complaint, Plaintiff asserts that while he was kept in the healthcare unit during his hunger strike around May or June 2026, his legal mail was withheld from him, which interfered with his court access. (Doc. 1, p. 14). This singular statement is not sufficient for the Court to plausibly infer that the temporary withholding of Plaintiff's mail actually hindered him from pursuing a legal matter. He does not identify any specific legal claim that was prejudiced by Defendants' actions. Accordingly, any claim Plaintiff is bringing for the denial of access to the courts under the First

and Fourteenth Amendments is dismissed.

The Court also finds that certain claims and Defendants are not properly joined in this action. *See Dorsey v. Varga,* 55 F.4 1094 (7th Cir. 2022); FED. R. CIV. P. 21. Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences *and* presents a question of law or fact common to all. *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007) (emphasis added); 3A *Moore's Federal Practice* § 20.06, at 2036–45 (2d ed. 1978).

Even, if this provision is satisfied with respect to the joinder of Defendants, the Court has discretion to require the claims to proceed separately if joinder would cause "prejudice, expense, or delay." *See Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (district courts are given "wide discretion ... concerning the joinder of parties") (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)); FED. R. CIV. P. 20(b). "This discretion allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Chavez*, 251 F.3d at 632 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

Here, Plaintiff's claims against (1) Nurse Jane Doe 1, Bice, NP Luking, Lieutenant John Doe 1, and Sergeant Platte for failing to provide medical care for his injuries sustained at Hill when he initially arrived at Lawrence on December 4, 2025 (Doc. 1, p. 7, 24); (2) Nurse Jane Doe 3 and Platte for denying him medical care for "hunger strike complications;" (Doc. 1, p. 13, 27-28); (3)

Platte, Lieutenant John Doe 1, John Doe 2, Nurse Jane Doe 3, Brown, Hughes, Gill, Ried, Cunningham, Bice, and Steber for the loss of his property (Doc. 1, p. 12, 13, 14); (4) Dr. Gentry for failing to provide adequate medical care for his eye condition and visions issues (Doc. 1, p. 17); and (5) Platte, Lieutenant John Doe 1, and Warden Brown for unconstitutional conditions of confinement while in restrictive housing (Doc. 1, p. 16) are not transactionally related to Plaintiff's claims regarding denial of treatment for his spinal condition and associated pain. While the events happened around the same time frame as his complaints regarding lack of medical treatment for his spinal condition, this does not convince the Court that the claims are part of the same "series of acts or transactions." *See United States v. Cavale*, 688 F. 2d 1098, 1106 (7th Cir. 1982) ("Case law reveals that 'the word transaction contemplates a series of many acts depending not so much upon immediateness of their connection as upon their logical relationship.'") (quoting *United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir. 1974)). Even if it could be argued that the claims are transactionally related, allowing the inclusion of all claims as described in the Complaint would run afoul of the Seventh Circuits admonition that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one [lawsuit]." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Accordingly, Plaintiff will be given 21 days from the date of this Order to inform the Court whether he would like these claims severed into three separate lawsuits or dismissed without prejudice. *Dorsey,* 55 F.4th at 1107.[4] Failure to notify the Court will result in dismissal of the claims. If Plaintiff chooses to have the claims severed and new cases are opened, Plaintiff is advised that he will be responsible for the filing fee associated with each new case. In addition, the claim(s) in his new case(s) will be subject to review pursuant to 28 U.S.C.

---

[4] Plaintiff's claim for failing to treat injuries sustained at Hill would be lawsuit 1; claims regarding mistreatment while in restrictive housing including denial of access to property, poor cell conditions, and failure to treat "hunger strike complications" would be lawsuit 2; and claim against Dr. Gentry regarding inadequate medical care for Plaintiff's eyes would be lawsuit 3.

§1915A.

Having dismissed improperly pled claims and finding some claims not properly joined in this case, the Court now delineates Plaintiff's remaining claims as follows:

**Count 1:** Eighth Amendment claim against Luking, Oganwu, Cunningham, Bice, Steber, Hughes, Brown, Centurion, John Doe 2, Gill, Stark, Ried, Babich, and IDOC for deliberate indifference to Plaintiff's spinal condition and associated pain.

**Count 2:** ADA/RA[5] claim for denying Plaintiff access to mobility assistance from October 12, 2025, through March 9, 2026.

**Count 3:** First Amendment retaliation claim against Hughes for allowing or directing Plaintiff to be transferred whenever he sought injunctive relief concerning his medical care from the courts.

**Count 4:** Eighth Amendment claim against Gill for the use of excessive force against Plaintiff on December 8, 2025.

**Count 5:** Eighth Amendment claim against Stark, Ried, and Brown for failing to intervene and stop the use of excessive force on December 8, 2025.

**Count 6:** Eighth Amendment claim against Stark, Gill, Ried, Nurse Jane Doe 2, and Oganwu for deliberate indifference to Plaintiff's injuries sustained on December 8, 2025.

**Count 7:** Illinois state law claim of intentional infliction of emotional distress against Brown, Hughes, Babich, Oganwu, Luking, Cunningham, and Steber.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without**

---

[5] Plaintiff does not mention the Rehabilitation Act (RA), 29 U.S.C. § 794(a), in the Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a pro se prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has asserted a claim under the latter statute. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

**prejudice as inadequately pled under the Twombly[6] pleading standard.**

## Count 1

Plaintiff asserts that during his time in IDOC custody, and specifically more recently since his transfer to Lawrence, he has been denied adequate medical care for his spinal disease, which causes sudden paralysis and chronic pain. (Doc. 1, p. 6).

Plaintiff has stated an Eighth Amendment claim against Dr. Oganwu, who appears to be Plaintiff's treating physician at Lawrence. Plaintiff asserts that the first time he had an appointment with Dr. Oganwu, she did not provide any treatment for his spinal condition and associated pain. (Doc. 1, p. 9, 10). It was not until sometime in April that he received some treatment (Doc. 2, p. 4), and on April 23, 2026, Dr. Oganwu informed him that she had "ordered a course of treatment," but it is not clear if this treatment was ever administered. (Doc. 1, p. 13). Under her care, he has not received a consistent effective treatment regime, he was not issued medically necessary permits for alternative restraints and mobility aids, his prescriptions have been delayed and/or canceled, appointments at off-site medical centers previously scheduled have been canceled, his order for an ESI injection was canceled, and he is not receiving proper pain management treatment. (Doc. 1, p. 9, 10, 13, 14, 15). These allegations are sufficient for Count 1 to proceed against Dr. Oganwu.

Count 1 will proceed against Warden Brown, NP Luking, HCA Cunningham, and ADA Coordinator Steber. Plaintiff asserts not only that he wrote to these individuals and filed grievances complaining about his need for medical care, medications, special restraints and/or waist chains, and a wheelchair or walker for his spinal conditions but that he also spoke with them (Doc. 1, p. 10, 15, 28), and they still did not take any action to ensure he received needed care and accommodations. These allegations state a claim against Brown, Luking, Cunningham, and Steber.

---

[6] *Twombly,* 550 U.S. at 570.

Page 14 of 24

Count 1 will proceed against Director Hughes. Plaintiff states that even while he was at other institutions, prior to his transfer to Lawrence, he wrote letters to Director Hughes and filed grievances, which she has reviewed, regarding the denial of adequate care for his spinal condition, including denial of ADA accommodations and pain medications, the need for recommended off-site medical appointments, and an ESI injection. (Doc. 1, p. 10, 11, 13-14, 18). He asserts that she has turned a blind eye to his constitutionally inadequate care and has continued to allow him to be transferred to various facilities, which leads to further lapses in treatment. (*Id.* at p. 21).

Count 1 will be allowed to proceed against Stark, Gill, and Ried for deliberate indifference to his spinal disease by failing to provide Plaintiff adequate mobility assistance in escorting him to and from the showers on December 8, 2025. Plaintiff alleges that he and other inmates told the officers that he was unable to walk unassisted and restrained with his hands behind his back because of his spinal condition; yet, the officers still placed him in full restraints, Stark let go of his arm at some point, and the other officers did not provide additional assistance, resulting in Plaintiff falling twice and injuring himself. (Doc. 1, p. 9, 25). These allegations state a viable claim against Stark, Gill, and Reid.

Count 1 is dismissed as to ADA Coordinator Bice. Plaintiff's allegations are too generic for the Court to plausibly infer that Bice disregarded an excessive risk to his health while she was at Lawrence from December 4, 2025, when Plaintiff arrived, through January 6, 2026, when Steber became the ADA Coordinator. (*See* Doc. 1, p. 10). Plaintiff states that he wrote incessantly to prison officials about his medical treatment, which included Bice, but "to no avail." (*Id.* at p. 10, 13). He also generally asserts that Bice, as well as other Defendants, denied him access to programs and services and ADA accommodations from December 4, 2025, through March 9, 2026. (*Id.* at p. 11, 12, 14). Plaintiff does not describe his correspondence in any detail, and he also does not

Page 15 of 24

allege any facts regarding Bice's conduct. The Court, therefore, cannot find that Plaintiff has stated a valid claim that Bice turned a blind eye to his situation. *See e.g. Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Accordingly, Count 1 is dismissed.

Count 1 is dismissed against IDOC. IDOC is not a "person" subject to suit for money damages under Section 1983. *Thomas v. Ill.,* 697 F.3d 612, 613 (7th Cir. 2012). Neither can a state agency be sued for prospective injunctive relief in federal court. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020) (collecting cases).

Count 1 is also dismissed as to Centurion. As a corporation, Centurion can only be liable under Section 1983 for an unconstitutional policy or practice. *See, e.g., Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (stating that "[s]uch a private corporation cannot be held liable under [Section] 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself."). Plaintiff alleges that Centurion has a policy, custom, and practice of replacing effective prescriptions with prescriptions and treatment that are cheaper and less effective. (Doc. 1, p. 12, 20). Because of this policy and practice, Plaintiff's Gabapentin, Tramadol, and Baclofen were discontinued for "no meaningful purpose," and he was only left with medicine that treats depression. (*Id.* at p. 20). Without these specific pain medications, he has suffered and is currently suffering in agony. (*Id.* at p. 21).

Plaintiff's allegation that Centurion's medication policy has resulted in unconstitutional care, however, is not supported by the facts in the Complaint. *See Messel v. Wexford,* No. 25-2191, 2026 WL 2114509 (7th Cir. Jun 22, 2026) (finding that the plaintiff's allegation that Wexford and Centurion maintained cost saving policies that resulted in the discontinuation of medication). Plaintiff asserts that when he requested for his pain medications to be renewed Dr. Oganwu told him that "Centurion and Lawrence were taking prisoners off these meds." (*Id.* at p. 20). But he

also claims that when similar medications were discontinued for other inmates, these medications were refilled "days later," while he continues to be prescribed other pain treatment that he asserts is ineffective. (*Id.* at p. 20; Doc. 2-1, p. 3). The fact that other inmates are receiving his desired medications suggests that he has not been denied the pain medications because of a widespread Centurion policy to prescribe cheaper, less effective medications. Thus, Plaintiff has not stated a plausible Eighth Amendment claim against Centurion for a cost-cutting policy.

And finally, the Court dismisses Count 1 to the extent Plaintiff is asserting liability based on the failure of Dr. Babich, Warden Brown, and Dr. Oganwu to correct the medical tracking system which resulted in off-site treatment having to be reapproved after transfers. (Doc. 1, p. 16). Plaintiff does not describe what was wrong with the medical tracking system and why it needed "correction;" nor does he identify an off-site appointment for his spinal condition that was canceled upon his transfer to Lawrence because of a medical tracking system error. There is nothing from which the Court can infer that Defendants acted with deliberate indifference relating to the medical tracking system.

### Count 2

Under the ADA, "no qualified individual with a disability shall, because of that disability...be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Discrimination under both statutes includes the failure to accommodate a disability. *Id.* at 672

(citation omitted).

Plaintiff asserts that while in IDOC custody, he was without a mobility device, such as a wheelchair, from October 13, 2025, through March 9, 2026, which resulted in numerous falls and being unable to access programs and services available to other inmates. (Doc. 1, p. 11, 25, 27). The Court finds that Plaintiff has adequately stated a claim under the ADA/RA. Plaintiff asserts his ADA/RA claim against several Defendants (*Id.* at p. 11, 14, 26), but individual employees of IDOC cannot be sued under the ADA and RA. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros,* 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, IDOC Director Latoya Hughes in her official capacity is the proper defendant for Plaintiff's ADA and/or RA claim. Count 2 will proceed against Hughes.

### Count 3

Plaintiff's assertion that Director Hughes has allowed or directed him to be transferred whenever he has sought injunctive relief concerning medical care for his spinal condition (Doc. 1, p. 21) is sufficient to state a First Amendment retaliation claim. *See Johnson v. Kingston,* 292 F.Supp.2d 1146, 1150-1151 (W.D. Wisc. 2003) (finding that the plaintiff had met the pleading requirements for a retaliation claim by describing his transfer, his involvement in other civil suits, and the defendants involved) (citing *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002)). Count 3 survives preliminary review.

### Counts 4 and 5

Plaintiff has stated a claim against Gill for the use of excessive force without justification after Plaintiff fell on December 8, 2025. *See Hudson v. McMillian,* 503 U.S. 1, 6-7 (1992); *De Walt v. Carter,* 224 F.3d 607, 619 (7th Cir. 2000). Count 4 survives preliminary review.

Count 5 will proceed against Stark and Ried for failing to intervene to prevent the use of excessive force by Gill. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

Count 5 is dismissed against Warden Brown. A failure to intervene claim requires the plaintiff to plead that "(i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result." *Watkins v. Ghosh*, No. 11 C 1880, 2014 WL 840949, at *3 (N.D. Ill. Mar. 4, 2014) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994)). Plaintiff allegations that Warden Brown was placed on notice that Gill and Ried had engaged in "abusive and excessive conduct" by other inmates does not allow the inference that Brown had a realistic opportunity to prevent the use of excessive force against Plaintiff on December 8, 2025.

## Count 6

Plaintiff states that on December 8, 2025, he sustained injuries from failing and the use of excessive force by Gill. (Doc. 1, p. 9). He requested medical care from Stark, Gill, Ried, and Nurse Jane Doe 2, but was denied. (*Id.* at p. 10). When had an appointment with Dr. Oganwu on December 16, 2025, he states he had "overt injuries to his face and head" and requested medical treatment and to be sent to the emergency room, but Dr. Oganwau did not provide medical care for his injuries. (*Id.*).

Based on a liberal reading of the Complaint, Plaintiff has stated an Eighth Amendment claim against Stark, Gill, Ried, Nurse Jane Doe 2, and Dr. Oganwu for failing to ensure Plaintiff received care for his injuries sustained on December 8, 2026. *See Brazelton v. Myatt,* No. 99 C 1169, 1999 WL 966435, at *5 (N.D. Ill. Oct. 19, 1999).

**Count 7**

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park,* 850 F.3d 308, 314 (7th Cir. 2017). *See also Bailey v. City of Chic.*, 779 F.3d 689, 696–97 (7th Cir. 2015); *Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005) (citing *Pavlik v. Kornhaber,* 761 N.E.2d 175 (Ill. 2001)).

Plaintiff's assertion of intentional infliction of emotional distress is conclusory. (Doc. 1, p. 20-21). The facts, as pled, do not describe any conduct on the part of Hughes, Dr. Babich, Dr. Oganwu, Luking, Cunningham, or Steber that could be characterized as "extreme and outrageous" or done with the intention of inflicting severe emotional distress. Accordingly, Count 7 is dismissed.

**TRO/PRELIMINARY INJUNCTION**

Plaintiff has filed a motion seeking a temporary restraining order (TRO) and/or preliminary injunction directing that he be seen by an orthopedic specialist, provided with adequate pain medication, prescribed Ultram, Neurontin (Gabapentin), and Baclofen, and administered ESI injections. (Doc. 2, p. 2).

To obtain preliminary injunctive relief, whether through a temporary restraining order (TRO) or preliminary injunction, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citations omitted).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief,

the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Plaintiff's request for the Court to order specific forms of medical treatment is far from the "least intrusive" means of addressing his concerns regarding inadequate medical care for his spinal condition. Furthermore, by Plaintiff's own admission he is receiving *some* medical treatment. Although further or different treatment may be required, there does not appear to be an emergency that must be addressed before Defendants can be heard. As such, a TRO is not warranted, and the request is **DENIED.**

The Court **DEFERS** ruling on Plaintiff's request for a preliminary injunction. Defendants are **DIRECTED** to respond to the request for a preliminary injunction within 14 days of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the request for a preliminary injunction. In response, Defendants shall provide information on Plaintiff's current medical diagnosis and care. Any factual assertions shall be supported with relevant evidence, such as affidavits and/or medical records.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Luking, Oganwu, Cunningham, Steber, Hughes,

Page 21 of 24

Brown, Gill, Stark, and Ried and is **DISMISSED** as to Bice, Centurion, John Doe 2, Babich, and IDOC. **COUNT 2** will proceed against Hughes in her official capacity. **COUNT 3** will proceed against Hughes. **COUNT 4** will proceed against Gill. **COUNT 5** will proceed against Stark and Ried and is **DISMISSED** as to Brown. **COUNT 6** will proceed against Stark, Gill, Ried, Nurse Jane Doe 2, and Oganwu. **COUNT 7** is **DISMISSED** in its entirety. Because there are no surviving claims against IDOC, Babich, Centurion, Nurse Jane Doe 1, Platte, Lieutenant John Doe 1, Gentry, John Doe 2, Nurse Jane Doe 3, and Bice the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

By **August 18, 2026,** Plaintiff shall inform the Court whether he would like the claims regarding denial of medical care for injuries sustained at Hill, denial of medical care for "hunger strike complications," the loss of his property, denial of medical care for eye and vision issues, and unconstitutional conditions of confinement while in restrictive housing severed into three separate lawsuits or dismissed without prejudice. *Dorsey,* 55 F.4th at 1107. Failure to notify the Court by the deadline will result in dismissal of these claims without prejudice.

The Clerk of Court shall prepare for Brown, Hughes, Oganwu, Cunningham, Luking, Steber, Gill, Stark, Ried, and Nurse Jane Doe 2 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes claims regarding Plaintiff's physical health and medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendants should respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

DATED: July 28, 2026

**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.